1

2

3

4

5        UNITED STATES DISTRICT COURT

6        EASTERN DISTRICT OF WASHINGTON

7   In Re:

8   LLS AMERICA, LLC,                    NO:  2:12-CV-628-RMP

9                        Debtor,          Bankr. Case No. 09-06194-FPC11

10  BRUCE P. KRIEGMAN, solely in his      Adv. Proc. No. 11-80109-FPC
    capacity as court-appointed Chapter 11
11  Trustee for LLS America, LLC,        FINDINGS OF FACT AND
                                         CONCLUSIONS OF LAW
12                        Plaintiff,

13  v.

14  MARTINA PEIPER, et al.,
                         Defendants.
15

16        A bench trial was held on October 14, 2014.  Thomas D. Cochran and

17  Daniel J. Gibbons appeared on behalf of Plaintiff.  Pro se Defendants Tyler

18  Foerstner and 685937 BC Ltd. did not appear at trial.  Defendant Heidi Schulze,

19  also a pro se defendant, passed away before trial.

20

FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 1

Dennis P. Hession appeared on behalf of Defendant Gudrun Foerstner. Mr. Hession explained, however, that his client had not authorized him to attend trial or participate in the proceedings on her behalf. The Court advised Mr. Hession that he was free to leave, and he departed.

Plaintiff informed the Court that settlement was pending with Defendant Martina Peiper. The Court granted Plaintiff's oral motion to transfer Defendant Peiper to the cause number reserved for defendants who had agreed to settle with Plaintiff.

Plaintiff confirmed on the record that all of the four remaining defendants, Gudrun Foerstner, Tyler Foerstner, Heidi Schulze, and the numbered entity 685937 BC Ltd., had received notice of the trial.

The Court heard witness testimony and, having reviewed the admitted exhibits and being fully informed, makes the following findings of fact and conclusions of law:

### PREVIOUS RULINGS

### 1.    Ponzi Scheme and Insolvency

On July 1, 2013, the Bankruptcy Court issued its Report and Recommendation Re Plaintiff's Motion for Partial Summary Judgment on Common Issues ("Report and Recommendation") recommending that the District Court grant the Trustee's Amended Motion for Partial Summary Judgment on two

FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 2

"Common Issues": (1) Debtor operated a Ponzi scheme; and (2) Debtor was insolvent at the time of its transfers to Defendants.  On August 19, 2013, this Court adopted the Bankruptcy Court's Report and Recommendation and entered an order granting the Trustee's Amended Motion for Partial Summary Judgment on the Common Issues ("Order Adopting Report and Recommendation").  *See* 2:11-cv-00357-RMP, ECF No. 92.  Therefore, this Court has determined that Debtor operated a Ponzi scheme and was insolvent at the time of each of the transfers to Defendants.

All of the findings and conclusions set forth in the Report and Recommendation and the Order Adopting Report and Recommendation are incorporated by this reference and are the law of this case.

**2.    Omnibus Hearing for the Testimony of Charles B. Hall**

On January 31, 2014, this Court entered its Order Granting Plaintiff's Motion for Omnibus Hearing.  ECF No. 18.  Pursuant to that Order, the court-appointed examiner, Charles B. Hall, testified at an Omnibus Hearing in open court commencing on February 25, 2014.  His testimony consists of written direct examination testimony that was filed on or about February 17, 2014, and the oral testimony that he gave at the Omnibus Hearing.  Mr. Hall was cross examined by several defense attorneys and by some pro se defendants.  Mr. Hall's testimony at the Omnibus Hearing is part of the record in this adversary action.

FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 3

**FINDINGS OF FACT**

1.      Debtor is the Little Loan Shoppe group of companies, which was formed originally in 1997.  PO-1 at 11.

2.      Debtor operated a Ponzi scheme, whereby investors' loans sometimes were used to pay other investors' promised returns on investments.  PO-1 at 16.

3.      Over the course of its existence, Debtor acquired approximately $135.4 million in funds invested by individual lenders, usually documented by promissory notes promising interest in the range of 40% to 60% per annum.  PO-1 at 7 n.2, 15.

4.      Debtor accumulated payday loan bad debts of approximately $29 million, which were written off in 2009.  PO-1 at 41.

5.      Debtor was never profitable at any time during its existence, and at no time did it generate sufficient profits to pay the amounts due the lenders.  PO-1 at 16, 53.

6.      Indicia and characteristics of the Ponzi scheme present in this case include:

      a.      Proceeds received from new investors masked as profits from running a payday loan business; PO-1 at 16, 22;

      b.      Promise of a high rate of return, usually between 40% to as much as 60%, on the invested funds; PO-1 at 19;

     c.     Debtor paid commissions to third parties who solicited new lenders, typically 10% annually of the amount received from the new lender; PO-1 at 20-21;

     d.     Debtor solicited funds as loans evidenced by promissory notes but demonstrated a pattern of "rolling over" the promissory notes when due onto new notes instead of paying off the obligation; PO-1 at 26;

     e.     Debtor, throughout its history, made false and misleading statements to current and potential lenders; PO-1 at 53-54;

     f.     Debtor was insolvent from its inception to the filing of its bankruptcy; PO-1 at 67.

7.     The court-appointed examiner, Charles B. Hall, by way of education, experience, and vocation, is qualified to analyze and review the legitimacy of an enterprise's operation and to detect a fraud based on Ponzi scheme operations.

8.     Mr. Hall's expert opinion is credible.

9.     Curtis Frye's testimony, which pertained to Debtor's record keeping and the accounting of investment, payments, and consulting fees/commissions to Defendants, is credible.

10.     Defendants are lenders who received payments from Debtor.

11.    Defendants received payments from Debtor that were written on checks showing Debtor's Spokane address.  *See* P-14 at 121-267; P-24 at 42-115; P-41 at 3-7; P-54 at 1-99.

12.    Some of the promissory notes that Defendants Gudrun Foerstner, Tyler Foerstner, and 685937 BC Ltd. received were executed in Washington State. P-12 at 2, 4; P-21 at 6, 8; P-51 at 5, 8-13, 15, 17-18.

13.    Debtor voided approximately 29,000 of the post-dated checks that it had issued to lenders, including Defendants Gudrun Foerstner, Tyler Foerstner, and 685937 BC Ltd.  PO-1 at 26; P-15; P-25; P-55.

14.    Defendants Gudrun Foerstner, Tyler Foerstner, and 685937 BC Ltd. received promissory notes that were rolled into or renewed in other promissory notes.  P-12 at 4; P-20 at 2; P-50 at 3.

15.    All of the transfers that the Trustee seeks to avoid were made within the period of September 1997 to July 21, 2009.  P-13; P-23; P-43; P-53.

16.    Defendants Gudrun Foerstner, Tyler Foerstner, and Heidi Schulze are "net winners."  *See* P-13 at 7; P-23 at 5; P-43.

17.    Defendant 685937 BC Ltd. is a "net loser" that did not opt into treatment under Debtor's Chapter 11 plan.  *See* P-53; *see also* Bankr. Case No. 09-06194-FPC11, ECF No. 1365-1 at 13 (indicating that Defendant 685937 BC Ltd. did not return a ballot regarding the bankruptcy plan).

FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 6

18.    There is no evidence that Defendants conducted any meaningful due diligence prior to investing in Debtor.

19.    Defendants were promised high rates of return from Debtor.  P-12 at 1-3; P-21 at 6-8; P-42 at 1; P-51 at 4-6, 8-15, 17-18.

20.    Defendants Gudrun Foerstner, Tyler Foerstner, and 685937 BC Ltd. loaned funds to Debtor after Debtor had "rolled" earlier loans into new promissory notes when payment became due.  *See* P-12 at 4 *and* P-13 at 7; P-20 at 2 *and* P-23 at 2, 4; P-50 at 3 *and* P-53 at 1.

21.    There is no indication in the record that Defendants received financial statements from Debtor.  *See* P-16 at 16-17; P-26 at 16-17.

22.    Defendant Gudrun Foerstner invested additional money in Debtor and continued to receive transfers from Debtor even after Debtor had informed her that her promissory notes would be backdated three or four years and after Debtor had asked Defendant Gudrun Foerstner not to disclose to investigators the name "Little Loan Shoppe."  *See* P-17; P-13.

23.    Defendant Tyler Foerstner recruited at least one other person to invest in Debtor and issued the investor a promissory note from himself rather than from Debtor.  P-59 at 24-25.  Defendant Tyler Foerstner then invested the person's funds in Debtor.  *See* P-59 at 24-25.

FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 7

24.    Defendant Tyler Foerstner continued to invest funds in Debtor even though he had experienced difficulty in receiving payment and replacement notes from Debtor.  *See* P-22 at 1 *and* P-23 at 4.

25.    Defendants knew or should have known that Debtor was perpetrating a fraud.

26.    The following summarizes the evidence of investments made by Gudrun Foerstner and the payments she received:

| | |
|---|---|
| Total Payments (Money Out): | $575,526.53 CAD and $7,733.14 USD |
| Total Investments (Money In): | $372,990.00 CAD and $3,990 USD |
| MIMO: | $202,536.53 CAD and $3,743.14 USD |

27.    The Court previously entered summary judgment against Tyler Foerstner, 2:12-cv-00067-RMP, ECF No. 66, finding that the following amounts constituted his loans to and payments from Debtor:

| | |
|---|---|
| Total Payments (Money Out): | $641,650.00 CAD |
| Total Investments (Money In): | $119,980.00 CAD |
| MIMO: | $521,670.00 CAD |

28.    The following summarizes the evidence of investments made by Heidi Schulze and the payments she received:

| | |
|---|---|
| Total Payments (Money Out): | $142,187.33 USD |
| Total Investments (Money In): | $130,000.00 USD |
| MIMO: | $12,187.33 USD |

FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 8

29.    The following summarizes the evidence of investments made by 685937 BC Ltd. and the payments it received:

|  |  |
|---|---|
| Total Payments (Money Out): | $989,235.04 CAD and $20,400.00 USD |
| Total Investments (Money In): | $1,104,555.00 CAD |

30.    Total transfers to Defendants are as follows:

- Gudrun Foerstner for $575,526.53 CAD and $7,733.14 USD;

- Tyler Foerstner for $641,650.00 CAD;

- Heidi Schulze for $142,187.33 USD; and

- 685937 BC Ltd. for $989,235.04 CAD and $20,400.00 USD.

31.    All transfers to Defendants were made with actual fraudulent intent and in furtherance of a Ponzi scheme.

32.    Defendants filed proofs of claim as follows:

- Gudrun Foerstner - Claim No. 406;

- Tyler Foerstner - Claim No. 624;

- Heidi Schulze - Claim No. 514; and

- 685937 BC Ltd. - Claim No. 625.

FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 9

**CONCLUSIONS OF LAW**

1.    This Court has jurisdiction of this proceeding pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157(d).

2.    This Court has jurisdiction over Defendants.

3.    This action was timely commenced.

4.    At least one unsecured creditor existed who triggered the strong arm power of 11 U.S.C. § 544(b)(1) because the creditor did not and should not reasonably have discovered the fraudulent nature of Debtor's Ponzi scheme transfers within one year before the bankruptcy petition was filed.  *See* 2:11-cv-00362-RMP, ECF No. 197.

5.    Washington State law governing fraudulent transfers applies.

6.    Under the statutes relating to fraudulent transfers, 11 U.S.C. § 548 and RCW 19.40, *et seq.*, payments received from Debtor are recoverable from each Defendant by the Trustee, subject to the defense of good faith pursuant to 11 U.S.C. § 548(c) and RCW 19.40.081(a).

7.    Transfers made in furtherance of a Ponzi scheme constitute actual fraud under the Bankruptcy Code and Washington's version of the Uniform Fraudulent Transfer Act (UFTA).  *See* Bankr. Adv. Proc. No. 11-80299-FPC, ECF No. 378 at 21-25.  "Where causes of action are brought under UFTA against Ponzi scheme investors, the general rule is that to the extent innocent investors have

1    received payments in excess of the amounts of principal that they originally

2    invested, those payments are avoidable as fraudulent transfers . . . ."   *Donell v.*

3    *Kowell*, 533 F.3d 762, 770 (9th Cir. 2008).

4         8.    A transferee of an actually fraudulent transfer may keep funds that it

5    took for value (or, under state law, for reasonably equivalent value) and in good

6    faith.   11 U.S.C. § 548(c); RCW 19.40.081(a).   As recipients of transfers that

7    constitute actual fraud, the burden of proof in establishing the affirmative defense

8    of good faith is on Defendants.   *In re Agric. Research and Tech. Grp., Inc.*, 916

9    F.2d 528, 535 (9th Cir. 1990); 5 COLLIER ON BANKRUPTCY ¶ 548.09[2][c] at 548-

10   98.2 (16th ed. 2011).

11        9.    Although "good faith" is not defined precisely in case law, at least

12   one court has noted that the absence of good faith is shown by a transferee who

13   knows that a debtor is operating a Ponzi scheme.   *See In re Agric. Research*, 916

14   F.2d at 535 (citing *In re Indep. Clearing House*, 77 B.R. 843, 861 (D. Utah

15   1987)).   The Ninth Circuit has quoted favorably an explanation in an early case

16   that a transferee's "knowledge or actual notice of circumstances sufficient to put

17   him, as a prudent man, upon inquiry as to whether his brother intended to delay or

18   defraud his creditors . . . should be deemed to have notice . . . as would invalidate

19   the sale as to him."   *Id.* (quoting *Shauer v. Alterton*, 151 U.S. 607, 621 (1894)).

20

FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 11

10.     Courts measure good faith by an objective standard, looking to what a transferee "'knew or should have known' in questions of good faith, rather than examining what the transferee actually knew from a subjective standpoint." *Id.* at 536.

11.     Under the Bankruptcy Code, Washington's UFTA, as well as relevant case law, the Court does not contemplate a recipient's intent when deciding whether to avoid fraudulent transfers.  5 COLLIER ON BANKRUPTCY ¶ 548.04[2] at 548-63; *Thompson v. Hanson*, 168 Wn.2d 738, 749 (2009). Accordingly, a transfer that constitutes actual fraud is avoided in its entirety unless the transferee establishes that a reasonable person in the transferee's position would not and should not have known of the fraud, not simply whether he or she *actually* acted in good faith.

12.     Transfers made by Debtor in furtherance of its Ponzi scheme are transfers made with actual intent to hinder, delay and/or defraud creditors under both state law, RCW Ch. 19.40, and federal law, 11 U.S.C. § 548(a)(1).

13.     Defendants failed to meet their burden to establish good faith and, thus, Defendants are required to return the entire amount of the transfers they received, including principal and interest.

14.     The Trustee is entitled to claw back and recover all transfers to Defendants.

FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 12

15.    Under RCW 19.40.041(a)(1), RCW 19.40.091(a) and the "strong arm powers" that 11 U.S.C. § 544(b)(1) grants to bankruptcy trustees, all of Debtor's transfers to Defendants, regardless of the date of transfer, are hereby set aside and avoided.

16.    The Trustee is entitled to pre-judgment interest at the applicable federal rate from July 21, 2009, when the bankruptcy case commenced.

17.    Pursuant to 11 U.S.C. § 548(a), 544, 550 and 551 and RCW 19.40.041(1) and 19.40.071, the Trustee is entitled to and is granted a judgment for the benefit of the Liquidating Trust of Debtor against **Gudrun Foerstner in the amount of $575,526.53 CAD and $7,733.14 USD**, plus pre-judgment interest from July 21, 2009, at the applicable federal judgment rate and post-judgment interest at the federal judgment rate from the date of judgment to the date the judgment is paid in full, *see* 28 U.S.C. § 1961.

18.    Pursuant to 11 U.S.C. § 548(a), 544, 550 and 551 and RCW 19.40.041(1) and 19.40.071, the Trustee is entitled to and is granted a judgment for the benefit of the Liquidating Trust of Debtor against **Tyler Foerstner in the amount of $641,650.00 CAD**, plus pre-judgment interest from July 21, 2009, at the applicable federal judgment rate and post-judgment interest at the federal judgment rate from the date of judgment to the date the judgment is paid in full, *see* 28 U.S.C. § 1961.

FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 13

19.     Pursuant to 11 U.S.C. § 548(a), 544, 550 and 551 and RCW 19.40.041(1) and 19.40.071, the Trustee is entitled to and is granted a judgment for the benefit of the Liquidating Trust of Debtor against **Heidi Schulze in the amount of $142,187.33 USD**, plus pre-judgment interest from July 21, 2009, at the applicable federal judgment rate and post-judgment interest at the federal judgment rate from the date of judgment to the date the judgment is paid in full, *see* 28 U.S.C. § 1961.

20.     Pursuant to 11 U.S.C. § 548(a), 544, 550 and 551 and RCW 19.40.041(1) and 19.40.071, the Trustee is entitled to and is granted a judgment for the benefit of the Liquidating Trust of Debtor against **685937 BC Ltd. in the amount of $989,235.04 CAD and $20,400.00 USD**, plus pre-judgment interest from July 21, 2009, at the applicable federal judgment rate and post-judgment interest at the federal judgment rate from the date of judgment to the date the judgment is paid in full, *see* 28 U.S.C. § 1961.

21.     The Trustee is entitled to reimbursement of his costs for pursuing this action.

22.     All proofs of claim filed by any Defendants in Debtor's Bankruptcy proceedings or any claims that may hereafter arise are disallowed pursuant to 11 U.S.C. § 502(d) unless and until the avoided transfers are returned to the Trustee.

FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 14

23.    Plaintiff requests the Court to equitably subordinate Defendants' claims against Debtor's estate.  "Equitable subordination requires that (1) the claimant who is to be subordinated has engaged in inequitable conduct; (2) the misconduct results in injury to competing claimants or an unfair advantage to the claimant to be subordinated; and (3) subordination is not inconsistent with bankruptcy law."  *Paulman v. Gateway Venture Partners III, L.P.* (*In re Filtercorp, Inc.*), 163 F.3d 570, 583 (9th Cir. 1998) (quoting *Spacek v. Thomen* (*In re Universal Farming Indus.*), 873 F.2d 1334, 1337 (9th Cir. 1989)) (internal quotation marks omitted).

24.    The Court equitably subordinates only Defendant Tyler Foerstner's claim.  Defendant Tyler Foerstner's conduct was inequitable in that he recruited at least one other new investor without investigating the signs that Debtor's business was fraudulent.  This misconduct contributed to the significant amount of fictitious profits that Defendant Tyler Foerstner obtained from the Ponzi scheme, to the injury of its victims.  Accordingly, all proofs of claim that may hereafter arise or that have been filed or brought or that may hereafter be filed or brought by, on behalf of, or for the benefit of Defendant Tyler Foerstner, against Debtor's estate, in Debtor's bankruptcy or related bankruptcy proceedings are subordinated to all other unsecured claims, pursuant to 11 U.S.C. §§ 510(c)(1) and 105(a).

1    25.    The    Trustee    is    awarded    all    applicable    interest,    costs    and

2  disbursements of this action against each Defendant.

3    The District Court Executive is directed to enter this Order and to provide

4  copies to counsel and to pro se defendants.

5    **DATED** this 23rd day of December 2014.

6

7    _____s/ Rosanna Malouf Peterson_____

8    ROSANNA MALOUF PETERSON
     Chief United States District Court Judge

9

10

11

12

13

14

15

16

17

18

19

20

FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 16